JASON M. HUGGINS et al. v. ELLSWORTH DAVIDSON et al., Appellants.

Division One, March 29, 1918.

1. **EXCHANGE OF LANDS: Forged Abstract: False Representations.** The exhibition of a general warranty deed in which the name of the grantee was left blank, conveying Nebraska land which defendant asserted he owned, and which he offered to exchange for Missouri lands by writing in plaintiff's name as the grantee, and an exhibition of an abstract showing title in the grantors named in said deed and which defendant represented to be reliable, and which was a forgery, authorize a court of equity to set aside the deed conveying the Missouri land in exchange for said Nebraska land, made by plaintiff in reliance upon said false representations.

2. ——: ——: **Delivery for Purposes of Examination.** The placing by the vendor, who claims to be the owner of the land, of the abstract of title in the hands of the attorney of the prospective purchaser, with the view of having said attorney examine it and determine whether it shows good title in the vendor, is to be considered as having been done for the purpose of inducing the purchaser to rely upon it as a true and correct abstract of the title; and if the last slip of said abstract, showing a transfer from the real owner to said vendor, is a forgery, the vendor's act in thus inducing the vendee to rely upon the abstract and exchange his land for the land described therein, is a false representation that amounts to fraud in law, unless the vendor shows he was wholly ignorant of said forgery and that the vendee obtained a good title notwithstanding said forgery.

3. ——: **Subsequent Mortgage to Innocent Lender: Monetary Judgment.** Plaintiffs made a deed of their Missouri lands in exchange for Nebraska lands which defendant claimed to own. Within a few days defendant made a mortgage on the Missouri land to a bank, for money borrowed. Defendant did not own the Nebraska land, but by false representations induced plaintiffs to exchange theirs for it. Plaintiffs bring suit to rescind their deed to defendant, and ask that the mortgage to the bank, which is made a party, be cancelled, and for general relief. The trial court set aside the deed, but refused to cancel the mortgage on the ground that the bank was an innocent holder for value of the mortgage note. *Held,* that the judgment should be that the plaintiff's deed be set aside, subject to the bank's mortgage, but that judgment should also be

rendered against defendant for whatever amount is due on the note, and that plaintiffs execute a quit-claim deed to defendant for the Nebraska lands, to be held in escrow by the clerk and to be delivered to defendant upon the payment within sixty days of the amount of the note, otherwise to be destroyed.

4. EQUITY: Omission of Evidence from Abstract. In an equity suit exhibits attached to a deposition, although excluded by the trial court, should be set out in the abstract or their substance stated, in order that the appellate court may determine their relevancy and competency.

Appeal from Texas Circuit Court.— *Hon. L. B. Woodside,* Judge.

REVERSED AND REMANDED (*with directions*).

*Lamar & Lamar* for appellant.

(1) Cancellation or recission is an exercise of the most extraordinary power of a court of equity, and will not be exercised except in a clear case on strong and convincing evidence. 9 Corpus Juris. p. 1254, sec. 195; Jackson v. Wood, 88 Mo. 76; Bryan v. Hitchcock, 43 Mo. 527; Haydon v. Railroad, 222 Mo. 140; Cohron v. Polk, 252 Mo. 281. (2) The evidence in such cases must be clear, cogent and convincing. 9 Corpus Juris, p. 1255, sec. 195; Jackson v. Wood, 88 Mo. 76; Cohron v. Polk, 252 Mo. 281. (3) And where proof of a negative allegation is a material part of plaintiff's case the burden is on him, to prove such negative allegation, unless the proof of such negative facts lie peculiarly within the knowledge of defendant. If such proof is equally available to both parties, then the burden is on the plaintiff. 16 Cyc. 297, note 15; Swinhart v. St. L. & Sub. Ry., 207 Mo. 434; Cummings v. Dent, 189 S. W. 1162; McGinnis v. Railway, 192 S. W. 115; Wolf v. United Railways, 155 Mo. App. 125, 130; Marshall v. Ferguson 94 Mo. App. 175; O'Kane v. Miller, 29 N. E. (Ind.) 439; New Albany v. Endres, 42 N. E. (Ind.) 687; Gas. Co. v. Small, 50 N. E. (Ind.) 479. And the rule is the same in cases for cancellation and rescission. Jackson v. Wood, 88 Mo. 76. (4) The courts will not decree rescission of an executed contract for the sale of

land except on the ground of actual fraud. Mere failure of title in the grantor will not authorize such a decree. Hart v. Railway, 65 Mo. 509; Florida v. Morrison, 44 Mo. App. 438. The petition in this case does not charge actual fraud when stripped of its surplus verbiage. It simply charges that neither Nichols nor the plaintiff had the title to the Nebraska land, and that the title and the posession thereof was in a third party, one P. Gunderson. (5) The finding of the trial court is not binding on this court in equity cases. Such cases are substantially tried *de novo* by this court and the evidence will be received. Cohron v. Polk, 252 Mo. 281; Blount v. Spratt, 107 Mo. 408.

*Barton & Impey* for respondents.

(1) An answer in which defendants simply "deny each and every allegation in plaintiff's petition contained except such as are hereinafter stated and set forth" is neither the general nor special denial required by statute; and hence the "defendants' defense rested upon the particular allegations of the other defenses." Dezell v. Fidelity Co., 176 Mo. 253; Pace v. Ins. Co., 173 Mo. App. 506; Brickell v. Williams, 180 Mo. App. 576; Cooper v. Ins. Co., 139 Mo. App. 581. This being the law and no assignment of error being made to any ruling of the court "upon the particular allegations of the other defenses" set forth in the answer, the judgment should be affirmed. (2) The legal effect of the answer is to raise but one issue, i. e. whether the false representations alleged in the petition, and specifically admitted in the answer, were believed when made. While the evidence abundantly shows guilty knowledge, bad faith, and moral turpitude on the part of the defendant Ellsworth Davidson, yet none of these are necessary elements in plaintiffs' cause of action. Cook v. Smith, 184 Mo. App. 566, 28 L. R. A. (N. S.) 204, note. Plaintiffs were entitled, therefore, to judgment on the pleadings below, and hence to an affirmance here. Dezell v. Fidelity Co., 176 Mo. 279. This rule has been applied to a case where the allegations that the abstract failed

to show title in the vendor were not denied. Horn v. Butler, 39 Minn. 515. (3) The objection to the depositions of Elder and Yost "were too general, vague and indefinite—imposing upon the court the burden which belonged to the counsel of sifting and scrutinizing the proof to ascertain what portion came within the scope of the exceptions." Donnell v. Jones, 48 Am. Dec. 66; Bank v. Hutton, 224 Mo. 50; Simpson v. Van Laningham, 267 Mo. 298; Armstrong v. Henley, 182 Mo. App. 323; Hilburn v. Insurance Co., 140 Mo. App. 364; Coombes v. Knowlson, 193 Mo. App. 559. With this tesimony in, to which there was neither reviewable exception nor motion to strike out, even appellants' counsel does not contend the evidence insufficient and the judgment should be affirmed for that reason. Farber v. Railway, 139 Mo. 284. (4) "A false statement as to the character of title to real estate, when made as a fact, or without regard to its truth or falsity, for the purpose of inducing another to purchase the same, constitutes actionable fraud, where a sale is induced thereby in reliance thereon, and injury results therefrom, and will entitle the vendee to maintain an action for the fraud and deceit, or a rescission of the sale, if he acts with reasonable promptness after the discovery of the fraud." 28 L. R. A. (N. S.) 202; Herman v. Hall, 140 Mo. 280; Cook v. Smith, 184 Mo. App. 566. (5) An abstract may be used as evidence against the one who furnishes it. 1 Ency. Evidence, 67. This is especially true here, where he said it was correct, and made by a reliable and bonded abstracter. When in evidence it should be interpreted according to its manifest meaning, although the meaning is not expressed by a full statement in words. Evans v. Foss, 9 L. R. A. (N. S.) 1039. The title thus admitted in Gunderson is presumed to have continued. Zwisler v. Storts, 30 Mo. App. 163; Janssen v. Stone, 60 Mo. App. 402; Jones on Evidence in Civil Cases (2 Ed.), sec. 58. (6) The palming off on plaintiff of the falsified abstract, even if defendant had passed a good title, is sufficient ground for rescission. Taylor v. Williams, 2 Colo. App. 559; Stave Co. v. Gardner, 154 Fed. 805; Boas v. Farrington, 85 Cal. 535.

RAILEY, C.—This is a proceeding in equity, commenced by plaintiffs in the circuit court of Texas County, Missouri, on October 24, 1914. The petition charges that on or about August 26, 1914, plaintiffs and defendant Ellsworth Davidson entered into an agreement, by which the latter was to convey, or cause to be conveyed, to plaintiffs, by general warranty deed, the northeast quarter of Section 27, Township 13, Range 33, located in Lincoln County, Nebraska, containing 160 acres more or less, in exchange for the southeast quarter of the southwest quarter of Section 2, and the east half of the northwest quarter and the southwest quarter of the northwest quarter of Section 11, all in Township 28 north, of Range 8 west, located in Texas County, Missouri; that    at the time of said agreement, said defendant had in his possession a general warranty deed, purporting to convey said Nebraska lands, from one Mary E. Nichols and her husband, James M. Nichols, duly acknowledged in Montgomery County, Kansas, on July 31, 1914, in which said deed there was a blank space for the name of the grantee, no name having been inserted therein; that in part performance of said agreement, said defendant filled in, or caused to be filled in, the names of these plaintiffs as grantees in said deed, and delivered the same to them; that in performance of plaintiffs' said agreement, they made, executed and delivered their warranty deed to said Ellsworth Davidson, by which they conveyed to him the Texas County lands aforesaid, which said deed was recorded in Texas County aforesaid, in Book 104, at page 609, of the Recorder's office of said county.

It is further alleged that at the time of said agreement and exchange, the defendant Ellsworth Davidson, for the purpose of inducing the same, positively, and with intent that it be relied upon, stated and represented to plaintiffs, that he was the owner of said Nebraska lands; that said deed would convey to plaintiffs the fee simple, absolute title thereto; that for the

Huggins v. Davidson.

purpose of confirming and supporting his statement and representation as aforesaid, he exhibited and delivered to plaintiffs what purported to be an abstract of title to said Nebraska land, and positively, with the intent to have the same relied upon, stated that it was a true abstract thereof, made by a reliable and bonded abstractor in the county where said Nebraska land is located; that upon examination of said abstract plaintiffs were convinced of the perfection and goodness of the title to be conveyed by said deed, and relying upon the representations of said defendant, as to such abstract, and being deceived thereby, they were induced to, and did, make and enter into said contract of exchange; whereas in truth and in fact, neither the said Mary E. Nichols, James M. Nichols, nor the defendant Ellsworth Davidson then, or at any other time, had, or held, a good, sufficient fee simple title, or any other kind of title, to said Nebraska lands; nor was the abstract so exhibited by said defendant a true or genuine abstract to said lands, made by a competent, reliable or bonded abstractor of the county in which said real estate was located, or elsewhere; but on the contrary, the title to said real estate, as well as possession thereof, was then vested in, and held by, one *P. Gunderson,* of Lincoln County, Nebraska; that said abstract, although *originally* made by a reliable and bonded abstractor, after the making thereof, and before the same was exhibited or delivered to plaintiffs, had been *altered* by entering the name of said *P. Gunderson,* as one of the grantors in a deed, shown in said abstract, and under which said deed the said Mary E. Nichols claimed by mesne conveyances; whereas in truth, and in fact, the said *P. Gunderson* did not join in said deed, nor did the records of Lincoln County, Nebraska, show such joinder; nor did the abstract as originally prepared and certified to by said abstractor show such joinder.

The petition further alleges that on the 5th day of September, 1914, defendants, Ellsworth Davidson and Annie Davidson, his wife, executed and delivered to the American State Bank of Coffeyville, Kansas, their

promissory note, for $275, due six months after date, with ten per cent interest from date of same, and for the purpose of securing same, executed a mortgage on the Texas County lands aforesaid, which said mortgage is duly recorded in said county, in Book 108, at page 54, of the Recorder's office.

It is averred that on or about October 20, 1914, plaintiffs first learned of their entire lack of title, and of the worthlessness of said deed to the Nebraska lands, and instantly offered to return said deed to defendant Ellsworth Davidson, or any other proper party, and demanded a return of their Texas County lands, which said offer and demand were refused; "and now in court plaintiffs tender said deed and offer to make any conveyance or do anything necessary to place defendants in the position they occupied prior to such exchange, and to restore anything they have received by reason of the transaction." They allege that they, the defendants, and said Nichols and wife, are residents of Montgomery County, Kansas; that said agreement and deeds were made in said county; that it is located about 300 miles from the Nebraska land, and the records pertaining to its title; that defendant Davidson and wife, and Nichols and wife, are insolvent, and that an action at law against them would be useless in a suit on the covenants of said deed; that plaintiffs have no adequate remedy at law.

The petition concludes, by asking the court to cancel the deed of the Texas County lands to Ellsworth Davidson, and the mortgage aforesaid given to defendant bank. They ask, in addition to foregoing, general relief.

Defendant Davidson and wife answered in said cause with a general denial, except as to such matters as are afterwards admitted.

It is admitted that Ellsworth and Annie Davidson are husband and wife; that Mrs. Davidson had nothing to do with said trade, and has no interest in this controversy, except as the wife of said Ellsworth Davidson. They allege that Mrs. Davidson told Jason M.

Huggins she did not want her husband to trade the Nebraska land, but wanted to keep it; that said Huggins traded for said land within one hour after said conversation.

It is alleged that Ellsworth Davidson, on or about the 26th of August, 1914, entered into an agreement with the plaintiff, Jason M. Huggins, to exchange the Nebraska land aforesaid for said Texas County lands; that he notified said Huggins that he had procured the title to said Nebraska land, from said Mary E. Nichols and husband; that the deed was in blank as to the second party; that he had the authority from said Nichols and husband to fill in the names of the grantees in said conveyance to whomsoever he might sell or trade the same.

Defendant Ellsworth Davidson further avers that he did not guarantee the title to said Nebraska land, but he believed then and now, that the title to same was vested in said Nichols and her husband, who exhibited to him an abstract of title, which he had had examined by an attorney; that said attorney stated the abstract seemed to show a merchantable title in said Mary E. Nichols and her husband.

Said defendant further avers that he stated all the facts within his knowledge with reference to the title of said property to said Jason M. Huggins, who seemed to be negotiating the trade for himself and his son, Charles W. Huggins; that he gave to said Jason M. Huggins the abstract of title; that the latter had said abstract examined by one A. C. Bowman; that the latter, in his presence, stated to said plaintiff that the abstract, in his judgment, showed a merchantable title to said Nebraska land. He avers that he told plaintiff Jason M. Huggins that he would not guarantee the title; that he did not know anything about it, only what was shown by the abstract, and what was told him by said James M. Nichols, which was communicated to said plaintiff; that said plaintiff, in the presence of Bowman and others, stated that he expected he was stung, but that he was

going to make the trade any way, and proceeded to close the deal; that the names of Jason M. Huggins and Charles W. Huggins were written in the blank left for that purpose, the names of the grantees having been left blank by said Nichols and husband; that plaintiffs, with full knowledge of all the facts, jointly and severally, accepted said deed thus executed without any warranty or covenants of warranty on the part of these defendants, but succeeded to all the rights of ownership that were possessed by the said Mary E. Nichols, and James M. Nichols, to the said Nebraska land. It is alleged that the deed to the Missouri land was then delivered to these defendants with the name of the grantees blank, in exchange for the Nebraska land.

Said defendants further aver that they made no false or fraudulent representations to said Jason Huggins, to induce him to trade for said land; that he acquainted said Huggins with all the facts, as far as they had come to his knowledge; that said plaintiffs acted on their own judgment in trading for said Nebraska land; that said Ellsworth Davidson suggested to said Jason M. Huggins, to not close the deal for said land, at that time, but to wait and investigate the title fully; that he would leave the trade open until such time as said plaintiff could satisfy himself about the title to the Nebraska land, but said plaintiff preferred not to delay the closing of the trade, accepted the deed as it was, without any guaranty of title on the part of said defendant, but stated he was going to close the trade and "take a chance on it any way," and further stated that he had traded for a part of the Missouri land without looking at it, and that he was going to trade for the Nebraska land "sight unseen;" that there was no fraud or deception of whatsoever nature or kind practiced on the part of this defendant on said plaintiffs or either of them; that if the title to said Nebraska land should not be good, "this defendant, Ellsworth Davidson, was deceived by the representations made by the said Mary E. Nichols and James M. Nichols, and by the abstract

exhibited to him to the same extent that these plaintiffs' are deceived;'' that this defendant should not be charged with any fraud or misrepresentations, for the reason that plaintiffs had all the avenues to obtain information that the above defendant had; that the latter, at the time said conveyance was made by said Nichols and husband to him, believed the title to said Nebraska land was good, and believes so yet; that if plaintiffs are in any way defrauded, in accepting the title to the Nebraska land, as stated in the petition, it is by reason of the lack of judgment of said plaintiffs and not the fault of this defendant; that the loss, if any, should be borne by said plaintiffs.

The case was tried as though a reply had been filed. Although this is an action in equity, instructions were asked, given and refused, which are not set out or considered by us in passing upon the merits of the case. The facts, as far as necessary, will be considered in the opinion. The trial court found the issues in favor of plaintiffs as against defendants Ellsworth Davidson and Annie Davidson, and for the defendant American State Bank of Coffeyville, Kansas, to the extent of the mortgage aforesaid, upon the ground that said bank was an innocent holder for value of the note aforesaid, described in said mortgage, sought to be cancelled. The court further found that the deed from plaintiffs to the Texas County lands was without consideration, and was given as the result of fraud and misrepresentations upon the part of said defendant Ellsworth Davidson, and that said defendants have no right, title or interest in said real estate. The decree cancelled said deed from plaintiffs to Davidson, and declared the former the owners of said Texas County lands, subject to the mortgage of the bank aforesaid, etc.

Defendants Ellsworth Davidson and Annie Davidson filed their motion for a new trial, which was overruled, and the cause was duly appealed by them to this court.

I.  It is contended by respondents that as an induce-ment for the exchange of the lands aforesaid, the de-fendant Ellsworth Davidson represented
**False Representations.** to the plaintiff Jason M. Huggins, that he (Davidson) was the owner of the Ne-braska land and that the abstract of title to said land delivered to plaintiffs was reliable. Plain-tiffs further contend that they relied upon said repre-sentations, believed them to be true and made the trade accordingly.

What are the facts with respect to this matter? The two principal witnesses who testified on this subject are Jason M. Huggins, and defendant Ellsworth Davidson. Their testimony, in some respects, is in irreconcilable conflict, with regard to the material facts of the case. In considering the evidence, by way of convenience, we will designate Jason M. Huggins as plaintiff, and Ells-worth Davidson as defendant.

The former testified that about the 25th of Au-gust, 1914, defendant came to his place of business at Coffeyville, Kansas, and opened up negotiations in re-gard to the exchange of said lands. The plaintiff had never seen the Nebraska lands, which were located about 300 miles from Coffeyville, Kansas, nor does it appear from the evidence that defendant had ever seen the Texas County land. Plaintiff testified that during the above talk, defendant advised him that he could call upon a certain barber in Coffeyville and talk with him about the Nebraska land. Plaintiff says he did so, and the barber disclaimed any *personal* knowledge of the Ne-braska land, but said he had husked corn up and down the river bottoms, and thought it was good country. Plaintiff says he then went to defendant's little hotel to see him, but did not find him; that on his way back up town, he met defendant and talked with him again about the Nebraska land; that he asked defendant *if he had a good clear abstract for it, and he said he had.* Plaintiff says he then told him if he had that he would trade with him. He says defendant then asked him, if he (plaintiff) had an abstract for the Missouri land, and

he told him he did.    They were then to meet at Bowman's office the next day to finish the trade.

The defendant in his testimony does not refer to the above conversation, nor did any other person testify as to what then occurred, except the plaintiff.    This is an important matter to be considered in weighing the testimony as a whole, in respect to what defendant said to plaintiff, *about the abstract of title.*

It appears from the evidence that plaintiff and defendant met at Bowman's office on the morning of August 26, 1914, to close the exchange.    Plaintiff says that defendant, after stating what he gave for the Nebraska land, produced a deed from Nichols, with the name of grantee blank; that he said to defendant, "I thought you owned this land," and defendant said: "I do, it belongs to me, but I expect to trade it again and I just took the deed in blank."    Plaintiff then asked Bowman if that was customary, and was advised by him that it was frequently done.

Plaintiff identified "Exhibit A" as the abstract of title which defendant gave him, and testified that he relied upon it.    He said when he received the abstract, at Transfer No. 10 thereon, the words *"And P. Gunderson, single"* were there.    Plaintiff also testified, as follows:

"I objected to taking the deed to the Nebraska land in blank and having my name placed in it, I wanted a deed from Davidson and he (Davidson) says, 'There's a good reliable abstract, made by a bonded abstractor and what more do you want?'"

Plaintiff testified that he had Bowman examine the abstract; that he was willing to take chances on the *quality* of the Nebraska land, but that he relied on the abstract.

Defendant Davidson testified that he did not *change* the abstract after he got it; *that there was not much said about the abstract at the time of the trade.*    He said plaintiff asked him if he (defendant) had had the abstract examined.    He answered in the affirmative, and told plaintiff Mr. Campbell had examined it.    Defend-

ant further testified as follows, in regard to the abstract:

"I did not tell him [plaintiff] whether it was a correct abstract or not. I said I did not know anything about the abstract, *that I had had it passed on and had traded for it with the understanding that it was all right.* I never told him it was a correct abstract." (Italics ours.)

Mr. Bowman testified in substance that while plaintiff and defendant were in his office, the latter told plaintiff he wouldn't guarantee anything in connection with the transaction; that defendant then told plaintiff he didn't know whether the abstract was correct or not, that he was simply transferring what he had. Witness gave it as his opinion that the abstract, as shown to him with *P. Gunderson appearing as grantor in No. 10,* showed a good title. On cross-examination, Bowman testified as follows:

"I don't *recollect* hearing Mr. Davidson say that there was a good abstract made by a bonded abstractor and what more did he want."

We have the unchallenged testimony of plaintiff as to what occurred when he and defendant met on the street and the latter told him *he had a good clear abstract of title to the Nebraska land.* The testimony of defendant, in regard to the abstract, heretofore set out, shows he was inducing the plaintiff to rely on its correctness.

Here was a *trader,* with a deed for Nebraska land, with the name of the grantee left *blank;* with an abstract of title containing a *forgery* as to the name of one of the necessary grantors in the chain of title, seeking to exchange his "stock in trade" for Missouri land. No explanation was ever made as to the *forgery,* except that defendant denies he committed it. He does not even offer to show that Nichols and wife *had* any title to the Nebraska land, nor that *P. Gunderson,* whose name was forged, was not the *real owner* of said land.

*The trade was made on August 26, 1914, and on September 5, 1914, the mortgage for $275 was executed by*

*defendant and wife to the bank aforesaid on the Texas County land.* This was the excuse he offered for refusing to rescind, when plaintiff told him he had no title, and demanded a rescission.

Without further consideration of this question, we find from the record that defendant represented to plaintiff he was the owner of the Nebraska land; that the abstract of title which he delivered to plaintiff was reliable; that plaintiff relied upon said representations, believed them to be true, and by reason thereof made the exchange of lands aforesaid.

II. It is *clear* from the evidence that defendant *claimed* to be the *owner* of the Nebraska land which he traded to plaintiff. According to his own testimony, he delivered the abstract of title to plaintiff, *knowing* that the latter was having Bowman examine the same with the view of determining whether or not it showed a good title in Nichols and wife. What other inference can be legitimately drawn from the delivery of the abstract of title to plaintiff under the foregoing circumstances, except that defendant was attempting to induce him to rely upon the correctness of said abstract?

In Curwen on Abstracts of Title, section 36, it is said:

"The object of the abstract is to furnish the buyer and his counsel with a statement of every fact, and an abstract of the contents of every deed on record, upon which the validity and marketableness of the title depend; so full that no reasonable inquiry shall remain unanswered; so brief that the mind of the reader shall not be distracted by irrelevant details; so methodical that counsel may form an opinion on each conveyance as he proceeds in his reading; and so clear that no new arrangement or dissection of the evidence shall be required. The buyer has a right to demand a marketable title. He has a right to demand that the abstract of title shall disclose such evidence of that title, as will enable him to defeat any action to recover, or incumber, the land."

The above quotation is cited with approval in several of the authorities hereafter·mentioned.

In Attebery v. Blair, 244 Ill. 1. c. 369, it is said:

"An abstract of title is, in a legal sense, a summary or epitome of the facts relied on as evidence of title, and it must contain a note of all conveyances, transfers or other facts relied on as evidences of the claimant's title, together with all such facts appearing of record as may impair the title. [Heinsen v. Lamb, 117 Ill. 549.] It should contain a full summary of all grants, conveyances, wills, and all records and judicial proceedings whereby the title is in any way affected, and all encumbrances and liens of record, and show whether they have been released or not."

In Fagan v. Hook, 134 Iowa, 1. c. 386, the Supreme Court of Iowa said:

"The object of an abstract is to enable the vendee to pass upon the validity of the title, and to enable him to do so it should contain everything material concerning its sources and conditions."

In 1 Cyc. 213, the law upon this subject is clearly stated as follows:

"The abstract should contain whatever concerns the source and condition of the title. It should contain a note of all conveyances and transfers or other facts relied on as evidences of the title, together with all such facts appearing of record as may impair the title."

To the same effect are Kane v. Rippy, 23 Pac. (Ore.) 180; Taylor v. Williams, 2 Colo. 1. c. 562; Smith v. Lander, 106 S. W. (Tex.) 1. c. 704; Bruce v. Wolfe, 102 Mo. App. 384, 386-7; St. Clair v. Hellweg, 173 Mo. App. 1. c. 666.

Turning to the abstract of title delivered to plaintiff by defendant, we find from the *undisputed* evidence in the case, that it contains a *forgery* as to the name of *one* of the *grantors* and without whose name the abstract would not have shown that either Nichols or defendant was the real owner of the Nebraska land.

O. E. Elder, who made the abstract in controversy, lived in North Platte, Nebraska, and had been engaged in the abstract business for about twenty years. He certified to above abstract in June, 1914, and at that time, mailed the same to James M. Nichols, of Oklahoma City, Oklahoma, and received a draft therefor. Among other things, he testified as follows:

"The abstract Exhibit 'A' is the one I made, a part of it. There is missing from said abstract a history of the foreclosure proceedings on which the sheriff's deed shown at entry No. 9 was based. I did not see the abstract any more until a few days ago. At this time the history referred to was not in the abstract. I made this abstract from the county records of Lincoln County, Nebraska, and data which I have in my office consisting of a complete brief of all the records in the county clerk's office in this county. Upon examination of said abstract Exhibit 'A' at this time I also note that Entry No. 10 there has been added to the names of the grantors the following: 'and P. Gunderson, single.'

"I examined this abstract after it was completed and before it was mailed to Mr. Nichols, and on the same day I sealed the abstract in the envelope and attended to the mailing of it myself and the words 'and P. Gunderson, single' at Entry No. 10, were not in the abstract. . . . I do not know by whom these words were inserted in the abstract."

R. E. Woodside, official stenographer of the Texas Circuit Court, after an examination of said "Exhibit A," gave it as his opinion that the words "and P. Gunderson, single," at Transfer 10 were made with another typewriter.

No testimony was offered by defendant to contradict either Elder or Woodside. Sheet No. 9 of said abstract, shows a conveyance of the Nebraska land by the sheriff of Lincoln County, Nebraska, to *P. Gunderson*, as grantee. It was dated and acknowledged July 18, 1902, and recites a considertion of

274 Mo.—4.

$215. This is the transfer referred to by Elder, from which, he says, the history of the sheriff's foreclosure proceedings are missing from the abstract. Sheet No. 10 of said abstract *now* shows, as grantors, John Thomas and wife, Maud Thomas *"and P. Gunderson, single."* The above words underscored, according to the undisputed testimony of Elder, *were placed there after the abstract was sent to Nichols.*

As this is a proceeding in equity, the exhibits from B to I, inclusive, which were attached to the deposition of Elder, although excluded by the trial court, should have been set out or the substance of same stated in the record, in order that we might determine their relevancy and competency.

It therefore stands uncontradicted in the record, that some one, after the *abstract* left the hands of Elder, was guilty of *spoliation* of same, by eliminating therefrom, the *historical facts* in regard to the sheriff's sale of said land to *P. Gunderson.* It is likewise undisputed that some one, after Elder parted with said abstract, was guilty of *forgery,* in placing thereon, in Transfer No. 10, the words *"and P. Gunderson, single."* The defendant Ellsworth Davidson was in possession of the above abstract containing said *spoliation* and *forgery,* and by the use of same induced plaintiffs to part with the title to the Texas County land. He received his deed to the Nebraska land from Nichols, to whom the abstract was sent as made by Elder. This *spoliation* and *forgery* must have occurred while Nichols and wife were the owners of the Nebraska land, or after it had been conveyed by them and delivered to defendant, with the names of the grantees left blank therein.

The defendant, although in possession of said abstract, under the circumstances aforesaid, and after using the same to acquire title to plaintiffs' land, stands mute in court, without even attempting to justify his conduct by offering to show that plaintiffs had obtained a good merchantable title to the Nebraska land regardless of the *spoliation* and *forgery* aforesaid. The plaintiffs, under the circumstances, were neither required

nor called upon to show that the title to the Nebraska lands had *failed* by reason of said spoliation and forgery. It would be a travesty upon the law and a mockery of justice, to permit the defendant to retain the Texas County land on the facts presented in this record. The conclusions above announced are in accord with the views of this court as expressed in Woolum v. Tarpley, 196 S. W. 1127; Johnson v. Jines, 193 S. W. 15, and Wilson v. Henderson, 191 S. W. 72.

We accordingly reverse and remand the cause with directions to the trial court, to set aside the decree heretofore entered by it and to enter a new decree in lieu thereof, finding the issues in favor of plaintiffs, as against said Ellsworth Davidson and wife, and setting aside the deed from plaintiffs to said defendants for the Texas County lands, subject to the mortgage of the defendant bank heretofore mentioned; to enter as part of the decree, that defendants Ellsworth Davidson and wife be divested of any and all interest they may have had in said Texas County lands, and that the title thereto, subject to said mortgage, be vested in said plaintiffs.

The trial court is further directed to enter, as a part of said decree, in favor of plaintiffs, a personal judgment against said defendant Ellsworth Davidson, for the unpaid portion, if any, of the mortgage and interest due thereon to the defendant bank; and also, to enter a judgment against said defendant for the costs of this litigation. It is further ordered that plaintiffs shall execute a proper quit-claim deed to defendant, Ellsworth Davidson, for the Nebraska lands aforesaid, and file the same with the clerk of the circuit court of Texas County, Missouri, to be held by him in escrow as hereafter stated; and if said Ellsworth Davidson shall pay off and satisfy said mortgage of record, within sixty days after the filing of our mandate in the circuit court of Texas County, Missouri, then said quit-claim deed shall be delivered to said defendant or his attorneys of record. If said mortgage, with the interest due thereon, is not paid off and satis-

fied of record, within sixty days of the filing of our
mandate as aforesaid, then said quit-claim deed shall be
destroyed by the clerk, and the title, if any, to said
Nebraska lands, remain where the deed from Nichols
and wife placed it. *Brown, C.,* concurs.

PER CURIAM:—The foregoing opinion of Railey,
C., is hereby adopted as the opinion of the court. All
of the judges concur.